```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                    SOUTHERN DIVISION at PIKEVILLE

LORETTA MULLINS o/b/o          )
JEFFERY MULLINS,               )
                               )
     Plaintiff,                ) Civil Action No. 7:11-CV-97-JMH
                               )
v.                             )
                               )
MICHAEL J. ASTRUE,             ) MEMORANDUM OPINION AND ORDER
COMMISSIONER OF SOCIAL         )
SECURITY,                      )
                               )
     Defendant.                )
                               )

              **    **    **    **    **
```

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [DE 10, 11].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Mullins applied for Social Security benefits on February 7, 2008, alleging an onset of disability of July 15, 2006, due to: back problems; heart conditions; high cholesterol; high blood pressure; bladder and stomach problems; acid reflux disease; and depression. [AR 170]. Hearings on his application were

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

conducted on October 13, 2009 [AR 40] and on February 22, 2010. [AR 28].  Plaintiff's application was denied by Administrative Law Judge ("ALJ") Andrew Chwalibog on March 30, 2010.  [AR 21]. Plaintiff timely pursued and exhausted his administrative remedies, and this matter is ripe for review and properly before this Court under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3).

    Plaintiff was forty-two-years-old at the time of the ALJ's final decision.  [*See* AR 166].  He dropped out of high school in the eleventh grade but obtained his General Equivalency Diploma in 1984.  [AR 43-44].  He also took a vocational course in auto mechanics but reported that he never used the skills he acquired there.  [AR 44-45].  From 1993 to 2006, he was employed as a truck driver.  [AR 171].  In his application for Social Security benefits, he reported having suffered from constant low back pain since July 2005.  [AR 178].  Additionally, he reported that he had become very depressed because of his inability to work and the resulting financial situation.  [AR 191].

    A 2006 MRI of Plaintiff's lumbar spine revealed mildly bulging discs at L3-L4 and L4-L5.  [AR 244].  That same year, Plaintiff received lumbar epidural steroid injections at the Pain Management Center in Pikeville, Kentucky.  [AR 217].  He was also treated for low back pain in late 2007 by Norman Mayer, M.D., a neurosurgeon. [AR 260].  Dr. Mayer diagnosed Plaintiff with degenerative disc disease at L4-L5 and L5-S1, an annular tear at L5-S1, and moderate

foraminal stenosis. *Id.* Dr. Mayer felt that surgery would be Plaintiff's last resort and that physical therapy was needed before considering surgical intervention. *Id.* There is no evidence in the administrative record suggesting that Plaintiff participated in physical therapy as Dr. Mayer recommended. Plaintiff underwent another lumbar MRI in January 2009. [AR 354]. That MRI revealed mild disc bulging at L2-L3, a moderate disc bulge with inferior foraminal narrowing and an annular tear at L3-L4, and moderate disc bulging with central protrusion, causing S1 nerve root contact at L4-L5. [AR 355].

Dr. Mayer also treated Plaintiff for neck pain. An MRI of the cervical spine revealed multilevel degenerative disc disease including disc bulges and osteophytes. [AR 387]. Plaintiff expressed that he was not interested in physical therapy and wished to proceed with surgical intervention. *Id.* In September of 2009, Dr. Mayer performed a cervical discectomy. [AR 393]. Later in September of 2009, Plaintiff sought treatment for both cervical and lumbar pain from another neurologist, Sujata Gutti, M.D. [AR 410]. Dr. Gutti's impression consisted of status-post cervical surgery, persistent C5-C6 muscles weakness and parasthesia, lumbago with right L5-S1 radiculitis, and peripheral neuropathy. Dr. Gutti's treatment plan was to obtain another MRI of the lumbar spine to rule out disc herniation and to treat with medications and physical therapy. [AR 412].

Plaintiff began treatment with Kevin Brandt Johnson, D.O. in March of 2009. [AR 382]. During the initial visit with Dr. Brandt, Plaintiff expressed his desire to establish a treatment relationship with a family doctor. Dr. Brandt diagnosed Plaintiff with low back pain, gastroesophageal reflux disease ("GERD"), and hypertension and prescribed medications for these problems. It appears that Brandt referred Plaintiff to a surgeon for a cyst in his left hand and to a pain management center for his low back. [AR 383].

In April of 2008, Humildad Anzures, M.D. rendered a consultative assessment of Plaintiff's functional capacity based on all of the medical evidence up to that date. [AR 272]. Dr. Anzures found Plaintiff's allegations of inability to work to be only partially credible because they were not fully supported by the medical evidence. [AR 277]. Further, Dr. Anzures determined that Plaintiff could: lift fifty pounds occasionally and twenty-five frequently; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and that Plaintiff had no additional limitations with pushing or pulling. Dr. Anzures felt that Plaintiff had no environmental or other limitations. [*See* AR 274-276].

In July 2008, an assessment of Plaintiff's function was performed by consulting physician Amanda Lange, M.D. [AR 323]. Dr. Lange's findings were consistent with those of Dr. Anzures.

4

[*See* AR 323-327]. She, too, found that Plaintiff's allegations regarding his pain and physical capabilities were partially credible. [AR 328]. In November of 2009, agency consultant Ronald Kendrick, M.D., an orthopedist, rendered an opinion of Plaintiff's functional capabilities. [AR 413]. Dr. Kendrick opined that Plaintiff could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently. He determined that Plaintiff could stand, walk, or sit for a total of six hours in an eight-hour workday and for one hour without interruption. [AR 416]. He found that Plaintiff could climb, balance, stoop, crouch, kneel, and crawl occasionally, but that he should never be exposed to heights, moving machinery, or vibration. [AR 417].

In March 2010, Dr. Johnson, Plaintiff's treating physician, rendered an assessment of Plaintiff's functional abilities. [AR 419]. Dr. Johnson opined that Plaintiff could lift less than five pounds, even if done only occasionally. *Id*. He found that Plaintiff could stand, walk, or sit less than three hours total in an eight-hour workday and less than one hour without interruption. He found that Plaintiff could never climb or crawl and that he could only occasionally balance, stoop, crouch, or kneel. [AR 420]. He further opined that Plaintiff could never reach, push, or pull, but that he could occasionally handle or feel items. [AR 421]. Dr. Johnson concluded that Plaintiff could never exposed to moving machinery, but that he could occasionally be exposed to all

5

other listed environmental conditions and activities. [AR 422].

The ALJ issued his decision on March 30, 2010. He found that the medical evidence established the severe impairment of low back pain. [AR 14]. The ALJ found this impairment to be severe within the meaning of the regulations, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1. [AR 16]. The ALJ found that the Plaintiff was not disabled and that, while he was unable to perform his past work, he retained the residual functional capacity ("RFC") to perform a limited range of light and sedentary work. [AR 20-21].

## II. OVERVIEW OF THE PROCESS

The ALJ, in determining disability, conducts a five-step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
2. An individual who is not working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)," then he is disabled regardless of other factors.
4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
5. If the claimant cannot do any work he did in the past because of a severe impairment, then the

> Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)(citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo,* nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter,* 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landshaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip,* 25 F.3d at 286.

**IV. ANALYSIS**

   **Substantial evidence supports the ALJ's decision not to accord Dr. Johnson's opinion controlling weight.**

   A treating source's opinion is entitled to controlling weight only when it is based upon objective medical findings and is not inconsistent with other substantial evidence in the record as a whole. *Cutlip,* 25 F.3d at 287. If an ALJ does not give a treating source's opinion controlling weight, the ALJ must evaluate the opinion applying the factors that are used to assess any other source's opinion. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 546 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). These factors include: length of treatment relationship and frequency of treatment; nature and extent of treatment relationship; degree to which the opinion is supported by objective medical evidence; consistency of the opinion with the record as a whole; and whether the source is a specialist in the field to which the opinion relates. *Id.* The ALJ's decision not to give Dr. Johnson's opinion controlling weight is supported by substantial evidence. Further, the ALJ articulated the reasons behind his decision, as required by 20 C.F.R. §§ 404.1527(d), 416.927(d).

   The ALJ gave clear reasons for his rejection of Dr. Johnson's opinion. First, the ALJ noted that Dr. Johnson had only seen the Plaintiff for a limited time. [AR 19]. Plaintiff admits his treatment relationship with Dr. Johnson was limited to ten office visits over the span of less than one year. As the ALJ noted, Dr.

8

Johnson's treatment of Plaintiff was limited to certain conditions. The record reveals that much the treatment focused on hypertension, GERD, and other problems that would have had a limited impact on Plaintiff's physical capabilities. [*See* AR 19]. Further, the ALJ noted, not even Dr. Johnson's own treatment notes reflect impairments as severe as those indicated in his assessment of Plaintiff's functional ability. Dr. Johnson's notations concerning Plaintiff's low back problems mostly consisted of Plaintiff's subjective complaints. It appears that Dr. Johnson's only objective notation was that Plaintiff had limited range of motion of the lumbar spine. [*See* AR 425].

Finally, the ALJ concluded, Dr. Johnson's assessment was not consistent with the weight of the evidence. Contrary to Plaintiff's assertion, the ALJ was not "acting as his own medical expert" in making his assessment of Dr. Johnson's opinion. It is the ALJ's responsibility to examine the medical evidence of record and to weight the evidence according to the rules for evaluating opinion evidence. *See* 20 C.F.R. § 416.927. Upon review of the record as a whole, the Court notes that no other medical assessment included restrictions that approached the extreme limitations assessed by Dr. Johnson. Additionally, the objective medical evidence, which includes MRIs of the cervical and lumbar spine, support the ALJ's decision to refrain from giving Dr. Johnson's opinion controlling weight. The ALJ did not err in concluding that

9

Dr. Johnson's treatment records, along with the other medical evidence, did not support the severe restrictions imposed by Dr. Johnson's opinion.  Plaintiff points out that the ALJ gave great weight to the opinion of Dr. Kendrick, whose opinion was rendered nearly three months before that of Dr. Johnson.  Plaintiff has provided no evidence in the record, however, that Plaintiff's condition changed during that time period in such a way as to produce the physical limitations expressed in Dr. Johnson's opinion.  Because substantial evidence supports the ALJ's decision and the ALJ clearly articulated his reasons for discounting the treating physician's opinion, the ALJ's decision will not be disturbed.

**V.   CONCLUSION**

For the foregoing reasons, we **DENY** the plaintiff's Motion for Summary Judgment [DE 10] and **GRANT** the defendant's Motion for Summary Judgment [DE 11].

This the 7th day of December, 2011.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

10